UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ORACLE CORPORATION, a Delaware corporation, and ORACLE AMERICA, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>ORG STRUCTURE INNOVATIONS LLC, a Texas limited liability company, and PAUL MORINVILLE, an individual resident of Indiana,<br><br>Defendants. | Case No: C 11-3549 SBA<br><br>**ORDER DENYING MOTIONS TO DISMISS**<br><br>Docket 18, 24. |

On July 19, 2011, Plaintiffs Oracle Corporation and Oracle America, Inc. (collectively "Oracle") brought this breach of contract action against Defendants ORG Structure Innovations LLC ("ORG Structure") and Paul Morinville ("Morinville") (collectively "Defendants"). The parties are presently before the Court on Morinville's motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. 18. Also before the Court is ORG Structure's motion to dismiss under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. 24.[1] Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES Morinville's motion to dismiss and DENIES ORG Structure's motion to dismiss, for the reasons stated below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

---

[1] In their respective motions, Morinville and ORG Structure move to transfer venue to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). However, because both parties have withdrawn their motions to transfer, the Court need not consider whether transfer of venue is appropriate.

## I.  BACKGROUND

### A.  Factual Background

Oracle is a Delaware corporation with its principle places of business in Redwood Shores, California.  Compl. ¶¶ 2-3, Dkt. 1.  Morinville is a resident of Indiana.  Id. ¶ 5.  Morinville is the named inventor of U.S. Patent No. 7,185,010, and related patents U.S. Patent Nos. 7,685,156, and 7,822,822 (collectively, "the Morinville Patents").  Id.  ORG Structure is a Texas limited liability company with it principle place of business in Woodway, Texas.  Id. ¶ 4.

Oracle "develops, manufactures, markets, distributes, and services enterprise software, including database and middleware software."  Compl. ¶ 9.  In addition to developing its own software, Oracle has acquired other enterprise software companies.  Id. ¶ 10.  One such acquisition took place in September 2007, when Oracle acquired Bridgestream, Inc. ("Bridgestream").  Id.  At the time of the acquisition, Bridgestream was a provider of enterprise role management software.  Id. ¶ 11.

On August 9, 2007, shortly before Oracle's acquisition of Bridgestream, Bridgestream entered into a license agreement (the "Agreement")[2] with Morinville and Internet Business InfoStructure Group, Inc. (collectively, "the Morinville Parties").  Compl. ¶ 12.  Oracle alleges, upon information and belief, that, at the time of the Agreement, the Morinville Parties were aware that Bridgestream might be acquired, and that the Agreement was structured to ensure that its protections would extend to the acquiring company.  Id. ¶ 13.  For that reason, the Agreement contained license grants and covenants not to sue protecting not only Bridgestream but also any company that acquired Bridgestream.  Id.  Among other things, the Agreement provides certain protections to "Affiliates," which, as defined under the Agreement, include Oracle.  Id.

---

[2] The Court notes that ORG Structure refers to the license agreement, i.e., the Agreement, as the "Bridgestone License."  For purposes of consistency and clarity, the Court will refer to the license agreement as the "Agreement."

In the Agreement, the Morinville Parties granted Bridgestream and its Affiliates a "worldwide, perpetual, non-exclusive and royalty-free license to the Morinville Patents with respect to the products and services in the Licensed Field, as defined in the Agreement." Compl. ¶ 14.  In addition, the Agreement contained a "warranty and irrevocable covenant by the Morinville Parties that current or future products or services of Bridgestream and its Affiliates in the Licensed Field would be immune from suit under the Morinville Patents." Id. ¶ 15.  In consideration for these and other promises, Bridgestream agreed to pay a license fee to the Morinville Parties in an amount exceeding $75,000.00. Id. ¶ 16.  Bridgestream and/or Oracle subsequently paid all license fees required by the Agreement. Id.

On or about March 17, 2011, Morinville assigned the Morinville Patents to ORG Structure for consideration of one dollar.  Compl. ¶ 17.  Under the terms of the Agreement, ORG Structure was required to agree in writing to be bound by the Agreement. Id.

ORG Structure was formed two days before the assignment, on March 15, 2011, as a Texas limited liability company.  Compl. ¶ 18.  Oracle alleges, upon information and belief, that Morinville participated in or otherwise encouraged the incorporation of ORG Structure. Id.  Oracle further alleges, upon information and belief, that Morinville caused the creation of OrgStructure, LLC ("OrgStructure"), an Indiana limited liability company, on April 20, 2011.  Id. ¶ 19.  Morinville is the registered agent for OrgStructure. Id.

On May 17, 2011, ORG Structure filed a civil action against Oracle in the United States District Court for the Northern District of Illinois, alleging that Oracle is infringing the Morinville Patents (the "Illinois Action").  Compl. ¶¶ 20, 22.  The assignment of the Morinville Patents to ORG Structure was not recorded with the U.S. Patent and Trademark Office until May 19, 2011 – two days after the Illinois Action was filed.  Id. ¶ 21.

In the Illinois Action, ORG Structure alleges that Oracle is willfully infringing the Morinville Patents by "making, using, importing, selling, and/or offering for sale in the United States multiple Oracle products."  Compl. ¶ 22.  Oracle alleges, upon information

and belief, that all of the products accused in the Illinois Action are within the Licensed Field. Id.

Oracle further alleges, upon information and belief, as follows. Morinville maintains an economic interest in ORG Structure whether as a consultant, investor, owner or a potential recipient of license fees or other revenue associated with ORG Structure's assertion of the Morinville Patents. Compl. ¶ 23. Morinville personally controls and directs the activities of ORG Structure or otherwise acts jointly on behalf of or for the benefit of himself and ORG Structure. Id. Morinville participated in or otherwise encouraged the incorporation of ORG Structure for the purpose of asserting the Morinville Patents against Oracle and avoiding his personal obligations under the Agreement, including, but not limited to, the covenant not to sue. Id. ¶ 24. As such, Morinville acts as an alter ego of ORG Structure in connection with the filing of the Illinois Action, and treating Morinville and ORG Structure as separate entities would be inequitable and unjust to Oracle because, among other things, Oracle would be left without a remedy for Morinville's actions in breach of the Agreement. Id. According to Oracle, by filing the Illinois Action, Defendants are depriving Oracle of all or a substantial part of the Agreement's value. Id. ¶ 25.

**B.      Procedural History**

On July 19, 2011, Oracle filed the instant action against Defendants, alleging two claims for relief: (1) breach of contract; and (2) breach of the covenant of good faith and fair dealing. See Compl. On August 9, 2011, Morinville and ORG Structure commenced an action against Oracle in the United States District Court for the Western District of Texas, alleging six claims for relief arising out of the Agreement (the "Texas Action"). See Case No. C 12-00297, Dkt. 1.

On August 23, 2011, Morinville and ORG Structure both filed a motion to dismiss or, in the alternative, motion to transfer venue. Dkt. 18, 24.[3] On September 22, 2011, the Illinois Action was transferred to the Northern District of California pursuant to 28 U.S.C. § 1404(a). Case No. C 12-00348, Dkt., 54. On January 10, 2012, the Texas Action was transferred to the Northern District of California pursuant to the first-to-file rule. Case No. C 12-00297, Dkt. 18.

On January 25, 2012 Oracle filed a motion to relate the Illinois Action and Texas Action with the instant action. Dkt. 94. Oracle's motion to relate was granted on February 6, 2012. Dkt. 96.

## II. DISCUSSION

### A. Legal Standards

#### 1. Rule 12(b)(1)

A defendant may move to dismiss a complaint under Rule 12(b)(1) for lack of standing. See Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010) ("Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss.") (citations omitted).

A Rule 12(b)(1) challenge to subject matter jurisdiction can be "facial," in which case the Court assumes the plaintiff's factual allegations to be true and draws all reasonable inferences in its favor. Doe v. See, 557 F.3d 1066, 1073 (9th Cir. 2009); Castaneda v. United States, 546 F.3d 682, 684 n. 1 (9th Cir. 2008). Or, the motion may be a "factual" or "speaking" motion, where the movant may submit materials outside the pleadings to support its motion. In that case, " '[i]t then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction.' " Colwell v. Dept. of Health and Human Servs., 558 F.3d 1112, 1121 (9th Cir. 2009) (quoting St. Clair v. City

---

[3] In Morinville's motion to dismiss, he states that he joins in ORG Structure's motion to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6) and incorporates by reference all facts, argument, and authority in that motion as though fully set forth in his motion. See Dkt. 18.

**1**  of Chico, 880 F.2d 199, 201 (9th Cir.1989)).  However, a facial attack need not be
**2**  converted to a speaking motion where "the additional facts considered by the court are
**3**  contained in materials of which the court may take judicial notice."  Barron v. Reich, 13
**4**  F.3d 1370, 1377 (9th Cir. 1994) (citation omitted).  "If the court determines at any time that
**5**  it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed.R.Civ.P
**6**  12(h)(3).

**7**                      **2.      Rule 12(b)(6)**

**8**       A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the
**9**  plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support
**10** a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.
**11** 1990).  In determining whether a complaint states a claim on which relief may be granted,
**12** the Court "accept[s] as true all well-pleaded allegations of material fact, and construe[s]
**13** them in the light most favorable to the non-moving party."  Daniels–Hall v. National Educ.
**14** Ass'n, 629 F.3d 992, 998 (9th Cir. 2010).
**15**     However, the Court is not required to accept as true "allegations that are merely
**16** conclusory, unwarranted deductions of fact, or unreasonable inferences."  In re Gilead
**17** Sciences Securities Litigation, 536 F.3d 1049, 1055 (9th Cir. 2008).  The complaint is
**18** properly dismissed if it fails to plead "enough facts to state a claim to relief that is plausible
**19** on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible
**20** on its face "when the plaintiff pleads factual content that allows the court to draw the
**21** reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v.
**22** Iqbal, 129 S.Ct. 1937, 1949 (2009).  Thus, "for a complaint to survive a motion to dismiss,
**23** the non-conclusory 'factual content,' and reasonable inferences from that content, must be
**24** plausibly suggestive of a claim entitling the plaintiff to relief."  Moss v. U.S. Secret Serv.,
**25** 572 F.3d 962, 969 (9th Cir. 2009).
**26**     On a Rule 12(b)(6) motion, the Court's inquiry generally is limited to the allegations
**27** in the complaint.  Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).  "A
**28** court may, however, consider certain materials-documents attached to the complaint,

documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

Where a complaint or claim is dismissed, leave to amend generally is granted, unless further amendment would be futile. See Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1087-1088 (9th Cir. 2002); see also Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (if a court dismisses the complaint, it should grant leave to amend, unless it determines that the pleading could not possibly be cured by the allegation of other facts).

### B. ORG Structure's Request for Judicial Notice

In connection with its motion to dismiss, ORG Structure filed a request for judicial notice pursuant to Rule 201 of the Federal Rules of Evidence. ORG Structure's Request for Judicial Notice ("RJN"), Dkt. 31. ORG Structure requests that the Court take judicial notice of two documents: (1) the Agreement; and (2) the first amended complaint filed in the Illinois Action.[4] Oracle does not object to the Court taking judicial notice of these documents.

A court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed.R.Evid. 201(b). The Court grants ORG Structure's request for judicial notice. The Agreement is subject to judicial notice because it is referenced by the complaint and accepted by the parties as authentic. See Ritchie, 342 F.3d at 908; Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002). The first amended complaint in the Illinois Action is subject to judicial notice because a court may take judicial notice of court filings and other matters of public record. See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n. 6 (9th Cir. 2006).

///

---

[4] The Court will sometimes refer to the Agreement as ORG Structure's RJN, Exh. 1, and the first amended complaint as ORG Structure's RJN, Exh. 2.

**C.     ORG Structure's Motion to Dismiss**

ORG Structure seeks dismissal of the complaint under both Rule 12(b)(1) and Rule 12(b)(6). Because subject matter jurisdiction is a threshold issue which goes to the power of the Court to hear a case, see Morongo Band of Mission Indians v. Cal. State Bd. of Equalization, 858 F.2d 1376, 1380 (9th Cir. 1988), the Court will address ORG Structure's motion to dismiss under Rule 12(b)(1) before addressing, if necessary, its motion to dismiss under Rule 12(b)(6).

**1.     Motion to Dismiss Under Rule 12(b)(1)**

ORG Structure contends that Oracle lacks standing and its claims are not ripe because Oracle's claims are based on a breach of contract that has not occurred.

"The Article III case or controversy requirement limits federal courts' subject matter jurisdiction by requiring, inter alia, that plaintiffs have standing and that claims be 'ripe' for adjudication." Chandler, 598 F.3d at 1121-1122 (citing Allen v. Wright, 468 U.S. 737, 750 (1984)). "Standing addresses whether the plaintiff is the proper party to bring the matter to the court for adjudication," while "[t]he related doctrine of ripeness is a means by which federal courts may dispose of matters that are premature for review because the plaintiff's purported injury is too speculative and may never occur." Id.

Article III standing requires the demonstration of three elements: (1) the plaintiff suffered an "injury in fact" that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992). A suit brought by a plaintiff without Article III standing is not a "case or controversy," and an Article III federal court therefore lacks subject matter jurisdiction over the suit. Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 101 (1998). In that event, the suit should be dismissed under Rule 12(b)(1). See id. at 109-110.

The question of ripeness turns on the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. Chandler, 598 F.3d at 1122.

The central concern of the ripeness inquiry is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all. Id. at 1122.

Here, Oracle alleges that Defendants breached the Agreement by filing the Illinois Action,[5] claiming that Oracle is infringing the Morinville Patents. See Compl. ¶¶ 17-30. Specifically, Oracle alleges that the initiation of the Illinois Action violates the covenant not to sue and license grant in the Agreement. Id. ¶ 29. According to Oracle, filing the Illinois Action against Oracle has caused Oracle to suffer damages in the form of being deprived of all or a substantial part of the Agreement's value. Id. ¶¶ 25, 30.

ORG Structure contends that Oracle has failed to establish Article III standing because its claims are based upon an alleged breach of contract that has not occurred and cannot occur because ORG Structure's first amended complaint in the Illinois Action states that " 'nothing in this complaint is intended, nor should it be construed, to be an accusation of infringement, or an attempt to seek damages, against any product with respect to which [Oracle has] a license under the [Agreement] or which are subject to the covenant not to sue defined by the [Agreement]." See ORG Structure's RJN, Exh. 2. In other words, ORG Structure claims that Oracle has failed to allege an "injury in fact" because ORG Structure's allegations of infringement in the Illinois Action do not extend to products licensed under the Agreement or to products subject to the covenant not to sue. The Court rejects this argument.

The Court finds that Oracle has alleged sufficient facts to establish Article III standing. Oracle alleges that Defendants breached the Agreement by filing the Illinois Action in violation of the covenant not to sue and license grant in the Agreement. Oracle further alleges that it has suffered damages as a result of Defendants' breach. The injury alleged by Oracle is concrete and particularized and actual, not conjectural or hypothetical,

---

[5] While ORG Structure is the only named Plaintiff in the Illinois Action, Oracle alleges that Morinville acts as an alter ego of ORG Structure in connection with the filing of the Illinois Action. Compl. ¶ 24.

1  is traceable to the challenged action of Defendants, and it is likely that the injury will be
2  redressed by a favorable decision.  The Court also finds that Oracle's claims are ripe.  The
3  claims alleged by Oracle do not involve uncertain or contingent future events.  The event
4  giving rise to the claims in Oracle's complaint – the filing of the Illinois Action – has
5  already occurred.  Accordingly, this case presents a real and substantial controversy that is
6  suitable for adjudication.  Therefore, ORG Structure's motion to dismiss under Rule
7  12(b)(1) is DENIED.

8        The Court notes that the "disclaimer" language in ORG Structure's first amended
9  complaint is not part of its original complaint.  Compare Case No. C 12-00348, Dkt. 1 with
10 Case No. C 12-00348, Dkt. 34.[6]  ORG Structure amended its complaint to add the
11 disclaimer language on August 1, 2011, after Oracle filed the instant action on July 19,
12 2011 (Dkt. 1), and after Oracle filed a motion to transfer in the Illinois Action on July 29,
13 2011.  See Case No. C 12-00348, Dkt. 27.  Thus, the Court finds that the disclaimer in the
14 first amended complaint is not determinative of whether the original complaint violated the
15 terms of the Agreement.

16       Moreover, even assuming that the disclaimer language is simply a clarification of
17 the scope of the infringement allegations in the original complaint as ORG Structure
18 suggests, the Court is not persuaded at this juncture that the disclaimer establishes that
19 Oracle lacks Article III standing or that this case is not ripe for adjudication.  Contrary to
20 ORG Structure's contention, the disclaimer does not demonstrate as a matter of law that
21 ORG Structure has not violated a legally protected interest possessed by Oracle under the
22 Agreement.  Oracle's complaint alleges that the Agreement protects Oracle from the claims
23 alleged by ORG Structure in the Illinois Action.  According to Oracle, the covenant not to
24 sue in the Agreement applies to Oracle products that ORG Structure accuses of patent
25 infringement in the Illinois Action.  While ORG Structure disputes this contention, there

---

27  [6] The Court takes judicial notice of the original complaint filed in the Illinois Action sua sponte.  Fed.R.Evid. 201(c)(1).  A court may take judicial notice of court filings and
28 other matters of public record.  See Reyn's Pasta Bella, 442 F.3d at 746 n. 6.

- 10 -

1 has been no legal determination that the Illinois Action does not extend to products covered
2 under the Agreement.  At this stage of the litigation, ORG Structure's assertion as to the
3 scope of the Illinois Action is not dispositive of whether the claims alleged therein violate
4 the Agreement.  In short, because the parties clearly dispute whether the Illinois Action
5 violates the Agreement, an actual controversy exists that is ripe for adjudication.

**2.     Motion to Dismiss Under Rule 12(b)(6)**

**a.     Choice-of-Law**

8 The threshold question presented is whether California or Delaware law applies.
9 Before analyzing whether Oracle has sufficiently pled its claims against ORG Structure, the
10 Court must determine what substantive law applies.  Oracle contends that Delaware law
11 applies because the Agreement contains a choice-of-law provision which states that the
12 "Agreement shall be governed by the laws of the state of Delaware without reference to
13 conflicts of law provisions thereof."  ORG Structure's RJN, Exh. 1.  ORG Structure does
14 not dispute Oracle's contention that Delaware law applies.[7]

15 Here, because this case was brought in California under the Court's diversity
16 jurisdiction, California's choice-of-law rules apply to determine whether California or
17 Delaware law applies.  Bridge Fund Capital Corp. v. Fastbucks Franchise Corp., 622 F.3d
18 996, 1002 (9th Cir. 2010) (a federal court sitting in diversity applies the forum state's
19 choice-of-law rules).

20 In California, trial courts must first examine the choice-of-law clause and ascertain
21 whether the advocate of the clause has met its burden of establishing that the claims fall
22 within the scope of the clause.  Washington Mutual Bank, FA v. Superior Court, 24 Cal.4th
23 906, 916 (2001).  If the trial court finds that the claims fall within the scope of a choice-of-

---

[7] ORG Structure does not argue that Oracle cannot enforce the choice-of-law provision against it.  Oracle alleges that it is a successor in interest to Bridgestream, a signatory of the Agreement.  Further, although ORG Structure was not a signatory of the Agreement, see ORG Structure's RJN, Exh. 1, because the Agreement requires the successor to the Morinville Patents to "expressly agree[] in writing to be bound by the Agreement, id. at ¶ 10, and because the parties do not dispute that the Morinville Patents were assigned to ORG Structure, the Court finds that, for purposes of this motion, ORG Structure is bound by the Agreement, including its choice-of-law provision.

1 law clause, it must next evaluate the clause's enforceability pursuant to the analytical
2 approach set forth in section 187, subdivision (2) of the Restatement Second of Conflict of
3 Laws (Restatement). Id.  Under that approach, the court must determine as a threshold
4 matter whether the chosen state has a substantial relationship to the parties or their
5 transaction, or whether there is any other reasonable basis for the parties' choice-of-law.
6 Id.  If either of these tests is satisfied, the second inquiry is whether the chosen state's law
7 is contrary to a fundamental policy of California.  Id.  If there is no such conflict, the court
8 shall enforce the parties' choice-of-law.  Id.  If, however, there is a fundamental conflict
9 with California law, the court must then determine whether California has a materially
10 greater interest than the chosen state in the determination of the particular issue.  Id.

11 As the California Supreme Court has recognized, the foregoing approach reflects
12 strong policy considerations favoring the enforcement of freely negotiated choice-of-law
13 clauses.  Washington Mutual, 24 Cal.4th at 917.  Accordingly, if the proponent of the
14 clause demonstrates that the chosen state has a substantial relationship to the parties or their
15 transaction, or that a reasonable basis otherwise exists for the choice of law, the parties'
16 choice generally will be enforced unless the other side can establish both that the chosen
17 law is contrary to a fundamental policy of California and that California has a materially
18 greater interest in the determination of the particular issue.  Id.

19 Here, the Court finds that Oracle's claims alleged against ORG Structure fall within
20 the scope of the choice-of-law clause, which provides that the "Agreement shall be
21 governed by the laws of the state of Delaware."  ORG Structure's RJN, Exh. 1 at ¶ 10.
22 Oracle, the proponent of the choice-of-law clause, is incorporated in Delaware.[8]  This is
23 sufficient to demonstrate that Delaware has a substantial relationship to the parties.  See
24 Nedlloyd Lines v. Super. Ct., 3 Cal.4th 459, 467 (1992) (substantial relationship present
25 where one of the parties is incorporated in the chosen state).  Thus, the question is whether
26 Delaware law with respect to the claims alleged in the complaint (i.e., breach of contract

27
28     [8] Bridgestream is also a Delaware corporation.  See ORG Structure's RJN, Exh. 1.

- 12 -

1  and breach of the implied covenant of good faith and fair dealing) is contrary to a
2  fundamental policy of California.  As previously noted, ORG Structure does not challenge
3  Oracle's contention that Delaware law applies.  As such, ORG Structure makes no showing
4  in this regard.  The Court, however, has reviewed the respective laws of the two states and
5  concludes that Delaware law is not contrary to California law.
6       As pointed out by Oracle, the elements of a breach of contract claim in both states
7  are nearly identical.  The only exception is that California requires an extra element – proof
8  of plaintiff's performance or excuse for non-performance.  Compare CDF Firefighters v.
9  Maldonado, 158 Cal.App.4th 1226, 1239 (2008); with VLIW v. Technology, LLC v.
10 Hewlett-Packard Co., 840 A.2d 606, 612 (Del. 2003).[9]  As for the breach of the implied
11 covenant of good faith and fair dealing claim, the elements with respect to this claim in
12 both states are similar.  Compare Digerati Holdings, LLC v. Young Money Entertainment,
13 LLC, 194 Cal.App.4th 873, 885 (2011); with Chamison v. HealthTrust, Inc.--Hospital Co.,
14 735 A.2d 912, 920-921 (Del. Ch. 1999).  Accordingly, because there is no fundamental
15 conflict with California law, the Court will enforce the parties' choice-of-law and apply
16 Delaware law.

17                    **b.**     **Oracle's Complaint**

18 ORG Structure contends that the complaint fails to state an actionable claim for
19 relief because Oracle did not plead that it acquired any rights under the Agreement by
20 assignment or transfer.  In support of its position, ORG Structure cites UD Technology
21 Corp. v. Phenomenex, Inc., 2007 WL 28295, at *6 (D. Del. 2007) and Insituform of North
22 America, Inc. v. Chandler, 534 A.2d 257 (Del. Ch. 1987), for the proposition that "[a]
23 fundamental principle of contract law provides that only those entities that are parties to a

---

[9] Under California law, a cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach.  CDF Firefighters, 158 Cal.App.4th at 1239.  Under Delaware law, the elements of a breach of contract claim are: (1) the existence of a contract, whether express or implied; (2) the breach of an obligation imposed by that contract; and (3) the resultant damage to the plaintiff.  VLIW, 840 A.2d at 612.

contract or conferred rights to or under a contract have standing to enforce it." According to ORG Structure, Oracle has failed to allege that it has any rights under the Agreement, and therefore dismissal is appropriate. The Court disagrees.

Here, Oracle alleges, in relevant part, as follows. Bridgestream, Oracle's predecessor in interest, entered into a license agreement (i.e., the Agreement) with the Morinville Parties shortly before Oracle acquired Bridgestream. Compl. ¶¶ 10, 12. In the Agreement, the Morinville Parties granted Bridgestream and its Affiliates a "worldwide, perpetual, non-exclusive and royalty-free license to the Morinville Patents with respect to the products and services in the Licensed Field, as defined in the Agreement." Id. ¶ 14. The Agreement is "in force among Morinville, ORG Structure and Oracle, either as signatories or successors to signatories of the Agreement." Id. ¶ 27. "Oracle is a successor in interest to the rights and benefits flowing to Bridgestream under the Agreement." Id. ¶ 34.

While ORG Structure acknowledges that the complaint alleges that Oracle acquired Bridgestream, ORG Structure nonetheless contends, without citation to authority, that to state an actionable claim for relief, Oracle must specifically plead that Bridgestream assigned or transferred the Agreement to Oracle in order for Oracle to possess any rights under the Agreement. According to ORG Structure, Oracle's acquisition of Bridgestream, without more, is not enough to confer rights under the Agreement because the terms of the Agreement make it clear that "even if Bridgestream had the ability to assign or transfer its rights under the [Agreement] to Oracle, once Oracle acquired all or substantially all of Bridgestream's assets, such assignment or transfer did not simply occur automatically upon acquisition."

The Court finds that Oracle has sufficiently pled that it acquired Bridgestream's rights under the Agreement as a successor in interest to Bridgestream, and therefore possesses rights to enforce the Agreement. See Delaware Ins. Guar. Ass'n v. Christiana Care Health Services, Inc., 892 A.2d 1073, 1077 (Del. Supr. 2006) (a successor in interest follows in ownership or control of property retaining "the same rights as the original owner,

1  with no change in substance"). ORG Structure, for its part, has failed to demonstrate that
2  Oracle must plead that Bridgestream specifically assigned or transferred the Agreement to
3  Oracle for Oracle to possess any rights under the Agreement.
4        Preliminarily, contrary to ORG Structure's contention, the plain language of the
5  Agreement does not support ORG Structure's position. The relevant portion of the
6  Agreement states that a party to the Agreement does not need prior written consent of the
7  other parties to the Agreement to assign and transfer the Agreement to a successor "to all or
8  substantially all of such party's assets or business ('Acquisition')." ORG Structure's RJN,
9  Exh. 1 at ¶ 10. Nothing in the Agreement supports ORG Structure's position that Oracle's
10 acquisition of Bridgestream is insufficient to confer rights under the Agreement to Oracle.
11 Second, ORG Structure has not demonstrated that Oracle has insufficiently pled its breach
12 of contract and breach of the implied covenant of good faith claims as a matter of law.
13 ORG Structure fails to cite any controlling authority holding that Oracle's successor in
14 interest allegations are inadequate to state that Oracle acquired enforceable rights under the
15 Agreement. Accordingly, ORG Structure's motion to dismiss under Rule 12(b)(6) is
16 DENIED.[10]

17       **D.**    **Morinville's Motion to Dismiss Under Rule 12(b)(6)**
18       Morinville contends that the complaint fails to state an actionable claim for relief
19 against him because Oracle did not adequately allege Morinville's alter ego status. As a
20 threshold matter, the parties disagree on which state's law applies. Morinville argues that
21 California law applies under the "government interest" test, while Oracle contends that
22 Texas law applies under a statutory choice-of-law analysis. Thus, the Court must first
23 determine which substantive law applies before analyzing whether the complaint states an
24 actionable claim against Morinville.

---

[10] To the extent ORG Structure contends that dismissal is appropriate because Oracle failed to plead that it is an "Affiliate" as defined in the Agreement, the Court rejects this contention. Oracle alleges that "the Agreement provides certain protections to Affiliates, which, as defined under the Agreement, include Oracle." Compl. ¶ 13. ORG Structure did not demonstrate that dismissal under Rule 12(b)(6) is warranted on this ground.

In his motion papers, Morinville assumes that California law applies. Oracle disagrees, and argues that, under California's choice-of-law rules, Texas law applies under a statutory choice-of-law analysis because California looks to the laws of the state in which the company (i.e., ORG Structure) is organized to assess alter ego liability involving a foreign limited liability company, citing California Corporations Code § 17450(a). In reply, Morinville argues that Oracle analyzed the incorrect law in its opposition. Morinville claims that, contrary to Oracle's contention, California law applies, not Texas law. Morinville maintains that under California's choice-of-law rules, the proper test to determine which state's law applies is the "government interest" test. In support of his position, Morinville cites, without analysis, Liew v. Official Receiver and Liquidator (Hong Kong), 685 F.2d 1192 (9th Cir. 1982) and Oncology Therapeutics Network Connection v. Virginia Hematology, 2006 WL 334532 (N.D. Cal. 2006).

The Court finds that the cases relied upon by Morinville are distinguishable from the instant action, and therefore Morinville failed to demonstrate that California law applies under the "government interest" test. The Court also finds that Morinville failed to demonstrate that neither Texas nor Delaware law applies.

First, as noted above, the Agreement contains a choice-of-law provision stating that the "Agreement shall be governed by the laws of the state of Delaware." ORG Structure's RJN, Exh. 1 at ¶ 10. Morinville and Oracle are both parties to the Agreement. Morinville is a signatory to the Agreement and Oracle alleges that it is a successor in interest to Bridgestream, a signatory of the Agreement. Morinville, however, did not argue, let alone demonstrate, that the choice-of-law provision is unenforceable with respect to Oracle's alter ego theory by applying the test set forth in Washington Mutual, 24 Cal.4th at 916 (outlining California's choice-of-law test in the context of a choice-of-law provision). That is, Morinville did not show that the claims alleged against him in the complaint (i.e., breach of contract and breach of the implied covenant of good faith and fair dealing) are outside the purview of the choice-of-law clause in the Agreement. Instead, in a footnote, Morinville contends that "there is no harm to Delaware by this Court's application of California law

under the 'government interest' test, despite the [Agreement's] choice-of-law provision, . . . because Delaware and California also consider similar factors in determining alter ego liability and apply tests that do not differ in any way."

Second, Morinville failed to demonstrate that Texas law does not apply based on a statutory choice-of-law analysis under § 17450(a). Instead, Morinville simply asserts that Texas and California examine similar factors in determining whether an individual is the alter ego of a limited liability company, and therefore there is no harm to Texas by this Court's application of California law.

The Court concludes that neither party has adequately briefed the choice-of-law issue. Morinville, for his part, did not establish that California law applies under the "government interest" test or that Texas and Delaware law do not apply, while Oracle failed to establish that Texas law applies based on a statutory choice-of-law analysis under § 17450(a). The parties failed to demonstrate what state's law applies, and the Court declines to make the determination sua sponte. See Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) (noting that "[o]ur adversarial system relies on the advocates to inform the discussion and raise the issues to the court.") Accordingly, because Morinville has the burden to demonstrate that dismissal of the complaint is appropriate under the governing law, and because he failed to do so, his motion to dismiss under Rule 12(b)(6) is DENIED.

### III. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1. ORG Structure's motion to dismiss is DENIED.

2. Morinville's motion to dismiss is DENIED.

3. This Order terminates Docket 18 and 24.

IT IS SO ORDERED.

Dated: 3/30/12

SAUNDRA BROWN ARMSTRONG
United States District Judge

- 17 -